Grant A. BUSBY, Plaintiff-Appellant,

v.

Ruth STIMPSON and Burl Shelton, Defendants-Respondents.

No. KCD27387.

Missouri Court of Appeals, Kansas City District.

Oct. 12, 1976.

Brown & Holcomb, Trenton, for plaintiff-appellant.

R. Leroy Miller, R. Max Humphreys, Allan D. Seidel, Trenton, for defendants-respondents.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

In a court-tried case, the trial judge found the issues against the plaintiff in an action for wrongful eviction.

Plaintiff has appealed, contending that the trial court erred in failing to find that plaintiff was a farm tenant entitled to 60 days notice to vacate.

The factual context is as follows.

The farm land which is in dispute is a portion of a 160 acre farm which Ruth Stimpson inherited from her father. In 1969, she and her then husband deeded the farm to her children by a former marriage. Three of these children lived away from the area, but one son, Burl Shelton, lived in the area. He was a witness and testified that he knew of the deed, but he "thought" his mother had reserved a life estate. The deed was, in fact, an absolute conveyance. Ruth Stimpson, after the recording of the deed in December, 1969, continued to deal with the land as if her own, retaining the

proceeds of rentals and paying the taxes. She consulted or advised with Burl Shelton as to the management of the land.

Plaintiff made an arrangement with Ruth Stimpson, one of the defendants in the early part of 1972 to put crops on certain land. There is a sharp dispute in the evidence concerning the terms and nature of the parties' relationships. The plaintiff's contention is that the land was *rented* to him on a three-year lease with the rent payment to be one-half of the crop in the field unharvested with the owner paying for one-half the seed, fertilizer and herbicide. The owner was to arrange for harvest of the owner's one-half. In other words, the crops were to be divided in the field. Ruth Stimpson, on the other hand, claimed that the land was *"rented"* for *"one"* year, and that year terminated in 1973. Plaintiff did plant and cultivate a crop in the 1972 growing season, mostly corn, but a few beans. The crop was harvested by the plaintiff in its entirety, the plaintiff having arranged with Burl Shelton to do so with an agreed price per bushel for the harvesting, drying and transport of the crops. In the early spring of 1973, Burl Shelton and plaintiff settled these accounts after some difficulty and dispute. It appears Ruth Stimpson had become ill in early 1972 and the dealings with respect to the land had been left to Burl Shelton; he both supervised the farm operation and settled for the crops. Not all of the farm was involved in the arrangements with the plaintiff, the house and improvements being rented to another person who also put up hay on a portion of the farm. Prior to the 1972 crop year, Ruth Stimpson had caused the land to be bulldozed and limed at her expense. The only improvement claimed to have been made by the plaintiff was the creation of a field entrance for which he obtained the permission of the highway department. Some of the land had not been farmed for fifty years, and plaintiff claimed that the planting and cultivation was made more difficult with the recent clearing of brush and trees and consequent roots and branches upon the ground. Plaintiff conceded the crop raised on the long-idle ground was a good one.

When plaintiff attempted to enter the land in early 1973 with the intention of plowing, he discovered others working the ground. Shortly thereafter, plaintiff was orally informed by Burl Shelton to remove his equipment within ten days.

Plaintiff of necessity makes a two-stage attack upon the trial court's judgment. First, plaintiff argues that the deed from the defendant Ruth Stimpson to her four children is invalid because of a failure of delivery and, second, that since she was the owner, his oral arrangement with her for a three-year lease, which the parties concede would be invalid under the statute of frauds, make him a tenant at will of agricultural lands entitled to the notice benefits of Section 441.050 RSMo 1969. The plaintiff must sustain both of these positions in order to reverse the action of the trial court, for obviously the trial court judgment can be sustained if the deed was valid or if the plaintiff was not entitled to the statutory notice upon any other basis.

 If plaintiff was a sharecropper and not a tenant, he was not entitled to the statutory notice to quit under § 441.050 RSMo 1969. *Smith v. McNew,* 381 S.W.2d 369 (Mo.App.1964). The general rule is that in a contract to farm land, a possessory interest tends to show a tenancy. *Hogue v. Wurdack,* 298 S.W.2d 492 (Mo.App.1957). A lease exists where it is the intention of the parties that the landowner part with exclusive possession and the other party take it for cultivation. *Jackson v. Knippel,* 246 S.W. 1007 (Mo.App.1923). In *Knippel,* the court found a landlord-tenant relationship existed under a written contract which provided for a "lease" of one year for one-half of the wheat as "rent." To determine whether a party is a cropper or a tenant, the court must look at the intention of the parties and the circumstances. *McNew, supra,* and "[w]here an agreement or contract to farm on shares is oral and informal . . . and the evidence is conflicting, the question whether a tenancy, or some other legal relation[ship], was created is essentially a

question of fact." *McNew, supra,* at p. 373. In *Smith v. McNew,* the court found that the trial court was not in error in finding a sharecropping agreement. In that case, plaintiff landowner entered into an oral agreement with defendant for the cultivation of plaintiff's land. Plaintiff claimed that the only term discussed was the percentage of share. Defendant claimed that he told plaintiff he would not rent for only a single year because of required improvements and that plaintiff told him to use the farm as his own. Defendant did cultivate and improve the ground from 1959 until June of 1962. Defendant decided on what crops to plant, furnished his own seed and used his own equipment. Plaintiff occupied a building on the property and shared a barn with defendant for storage.

■ The similarity between the facts in the instant case and *McNew* is striking. The court in the instant case could have found under the evidence that plaintiff was a sharecropper and not a tenant, a finding which clearly would have made his eviction without notice proper.

This is particularly true when the additional facts not present in *McNew* but clearly in this case are considered. Here the crops were divided in the field. One-half of the crop was not *"delivered"* as *"rent"* and the house was rented to another tenant who put up hay on a part of the farm. Both these facts tend to show that there was no intent to deliver *possession,* an essential element under a lease or tenancy as opposed to a sharecrop arrangement.

The evidence in this case would support a finding that plaintiff was under a sharecrop arrangement and not a tenancy, and the trial court's implied finding to that effect is binding upon this record. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.1976).

■ Still another theory would support the judgment of the trial court. Even if the trial judge found that plaintiff was a tenant under an oral contract with the owner, the sixty days notice is not necessary if the term of the tenancy was fixed. The general rule is that where a tenant enters into possession of agricultural land under an oral lease and pays rent, it creates a tenancy-at-will. If the tenant remains in possession or holds over "by operation of law, it becomes a tenancy from year to year and can be terminated on the part of the landlord, only, by giving the tenant written notice to vacate at least 60 days before the end of the year [citing predecessor to § 441.050 RSMo 1969]." *Coleman v. Fletcher,* 238 Mo.App. 813, 188 S.W.2d 959, 963 (1945). In that case, plaintiff claimed he leased the land from defendant under an oral lease for the years 1940 and 1941. Plaintiff farmed the land in 1940, dividing the crops with defendant and in February of 1941 defendant prevented plaintiff from cultivating. The court held that plaintiff was entitled to 60 days notice.

■ *Coleman* has been limited by *Vanderhoff v. Lawrence,* 201 S.W.2d 509 (Mo. App.1947), aff'd 206 S.W.2d 569 (Mo.1947). In *Vanderhoff,* plaintiff landowners brought an action of unlawful detainer. Defendants were in possession under an oral lease and contended that they were entitled to 60 days written notice to vacate. The rental was based on a crop sharing arrangement and the term of the lease was disputed; however, defendants did not dispute the trial court's finding that the lease was for one year, March 1, 1945—March 1, 1946. The court held that the predecessor to § 441.070 RSMo 1969 governs oral leases which are unenforceable because of the statute of frauds. That section provides, "No notice to quit shall be necessary from or to a tenant whose term is to end at a certain time, or when, by special agreement, notice is dispensed with." In applying that section, the court held that plaintiffs were not required to give defendants 60 days notice prior to March 1, 1946 because the *"time* for quitting became fixed and was a valid provision, of which [defendant] had knowledge, and no notice to vacate was necessary." *Vanderhoff, supra,* 513–514. Thus, the rule in *Coleman* appears only to apply to oral leases for an indefinite term, or where no notice was given and the period fixed by the oral agreement is unex-

pired. *Vanderhoff v. Lawrence,* 206 S.W.2d 569, 570 (Mo.1947).

It is clear that plaintiff did not receive written notice of any kind. However, such notice was unnecessary if the lease was for a period of a year. The evidence was conflicting on the term of the arrangement and a finding by the lower court of one year tenancy based upon the testimony of Ruth Stimpson would be a permissible finding upon this record. Rule 73.01; *Murphy v. Carron, supra.*

The judgment is affirmed.

All concur.